TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARIA JHAI (Cal. Bar No. 283059)
KATHRYNNE SEIDEN (Cal. Bar No. 310902)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4138/0631
     Facsimile: (213) 894-0141
     E-mail:   maria.jhai@usdoj.gov
              kathrynne.seiden@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-161(A)-AB |
|---|---|
|     Plaintiff, | PLEA AGREEMENT FOR DEFENDANT EDWIN OLIVA |
|        v. | |
| EDWIN OLIVA, | |
|     Defendant. | |

    1.   This constitutes the plea agreement between EDWIN OLIVA ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Counts One and Two

1  of the Superseding Indictment in United States v. Edwin Oliva, CR No.

2  19-161(A)-AB, which charge defendant with distribution of fentanyl

3  resulting in death, in violation of 21 U.S.C. §§ 841(a)(1),

4  (b)(1)(C), and possession with intent to distribute heroin, in

5  violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i).

6          b.    Not contest facts agreed to in this agreement.

7          c.    Abide by all agreements regarding sentencing contained

8  in this agreement.

9          d.    Appear for all court appearances, surrender as ordered

10  for service of sentence, obey all conditions of any bond, and obey

11  any other ongoing court order in this matter.

12          e.    Agree that all court appearances, including

13  defendant's change of plea hearing and sentencing hearing, may

14  proceed by video-teleconference ("VTC") or telephone, if VTC is not

15  reasonably available, so long as such appearances are authorized by

16  General Order 20-043 or another order, rule, or statute.  Defendant

17  understands that, under the Constitution, the United States Code, the

18  Federal Rules of Criminal Procedure (including Rules 11, 32, and 43),

19  he may have the right to be physically present at these hearings.

20  Defendant understands that right and, after consulting with counsel,

21  voluntarily agrees to waive it and to proceed remotely.  Defense

22  counsel also joins in this consent, agreement, and waiver.

23  Specifically, this agreement includes, but is not limited to, the

24  following:

25          i.    Defendant consents under Section 15002(b) of the

26  CARES Act to proceed with his change of plea hearing by VTC or

27  telephone, if VTC is not reasonably available.

28

1        ii.   Defendant consents under Section 15002(b) of the

2   CARES Act to proceed with his sentencing hearing by VTC or telephone,

3   if VTC is not reasonably available.

4        f.   Not commit any crime; however, offenses that would be

5   excluded for sentencing purposes under United States Sentencing

6   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

7   within the scope of this agreement.

8        g.   Be truthful at all times with the United States

9   Probation and Pretrial Services Office and the Court.

10        h.   Pay the applicable special assessments at or before

11   the time of sentencing unless defendant has demonstrated a lack of

12   ability to pay such assessments.

13        i.   Defendant further agrees:

14        i.   To forfeit all right, title, and interest in and

15   to any and all monies, properties, and/or assets of any kind, derived

16   from or acquired as a result of, or used to facilitate the commission

17   of, or involved in the illegal activity to which defendant is

18   pleading guilty, including but not limited to the following items

19   seized on February 28, 2019:

20        A.   One Smith & Wesson, model M&P 45 Shield, .45

21   caliber semiautomatic pistol, bearing serial number HWT1396; and

22        B.   Six rounds of live ammunition (the

23   "Forfeitable Assets").

24        ii.   To the Court's entry of an order of forfeiture at

25   or before sentencing with respect to the Forfeitable Assets and to

26   the forfeiture of the assets.

27        iii. To take whatever steps are necessary to pass to

28   the United States clear title to the Forfeitable Assets, including,

without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

iv.  Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

v.  Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

vi.  Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

vii. To prevent the transfer, sale, destruction, or loss of the Forfeitable Assets to the extent defendant has the ability to do so.

viii.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

ix.  That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

x.  With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument,

announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that the forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the Superseding Indictment.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3                        NATURE OF THE OFFENSES

4       4.   Defendant understands that for defendant to be guilty of

5  the crime charged in Count One, that is, distribution of fentanyl

6  resulting in death, in violation of Title 21, United States Code,

7  Sections 841(a)(1), (b)(1)(C), the following must be true:

8  1) defendant knowingly distributed fentanyl; and 2) defendant knew

9  that the substance he distributed was fentanyl or some other

10 federally controlled substance.  "Distributing" means delivering or

11 transferring possession of fentanyl to another person, with or

12 without any financial interest in that transaction.  An act is done

13 knowingly if the defendant is aware of the act and does not act

14 through ignorance, mistake, or accident.

15      5.   Defendant understands that for defendant to be subject to

16 the statutory maximum and statutory minimum sentences set forth

17 below, the government must prove beyond a reasonable doubt that the

18 use of the fentanyl defendant distributed to B.M. resulted in death.

19 That is, but for B.M.'s ingestion of the fentanyl defendant

20 distributed to her, B.M. would not have died.

21      6.   Defendant admits that defendant, in fact, distributed

22 fentanyl to B.M. and that her use of that fentanyl resulted in her

23 death.

24      7.   Defendant understands that for defendant to be guilty of

25 the crime charged in Count Two, that is, possession with intent to

26 distribute heroin, in violation of Title 21, United States Code,

27 Sections 841(a)(1), (b)(1)(A)(i), the following must be true:

28 1) defendant knowingly possessed heroin; and 2) defendant possessed

                                6

the heroin with the intent to distribute it to another person. "Possess with intent to distribute" means to possess with intent to deliver or transfer possession of heroin to another person, with or without any financial interest in the transaction.  An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident.

8.   Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that defendant possessed at least one kilogram of a mixture and substance containing a detectable amount of heroin.

9.   Defendant admits that defendant, in fact, possessed at least one kilogram of a mixture and substance containing a detectable amount of heroin.

<u>PENALTIES</u>

10.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 841(a)(1),(b)(1)(C), is: lifetime imprisonment; a lifetime period of supervised release; a fine of $1,000,000; and a mandatory special assessment of $100.

11.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C) is: 20 years' imprisonment, followed by a three-year period of supervised release, and a mandatory special assessment of $100.

12.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 841(a)(1),(b)(1)(A)(i), is: lifetime imprisonment; a

lifetime period of supervised release; a fine of $10,000,000; and a mandatory special assessment of $100.

13.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(i) is: 10 years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

14.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: lifetime imprisonment; a lifetime period of supervised release; a fine of $11,000,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

15.   Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

16.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

17.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

8

rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

18. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

1

<u>FACTUAL BASIS</u>

2    19.  Defendant admits that defendant is, in fact, guilty of the

3   offenses to which defendant is agreeing to plead guilty.  Defendant

4   and the USAO agree to the statement of facts provided below and agree

5   that this statement of facts is sufficient to support pleas of guilty

6   to the charges described in this agreement and to establish the

7   Sentencing Guidelines factors set forth in paragraph 21 below but is

8   not meant to be a complete recitation of all facts relevant to the

9   underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11    On February 27, 2019, defendant was introduced to B.M. through a

12  mutual friend, M.B.  M.B. provided defendant B.M.'s phone number and

13  told defendant that B.M. wanted to purchase cocaine from him.

14  Defendant sent a text message to B.M. and asked her if she "need[ed]

15  to pick up."  Defendant, B.M., and M.B. then arranged to meet later

16  that night in Hollywood, California.

17    At approximately 10 p.m., B.M. informed defendant and M.B. that

18  B.M. would not meet them as planned because she did not have a ride

19  from Santa Clarita, California, to Hollywood.  In response, defendant

20  offered to drive to Santa Clarita to pick her up and take her to

21  Hollywood.  Before accepting his offer, B.M. asked "[w]hat is

22  expected of me if you do this for me?"  Defendant responded, "I just

23  want to have a good time with good company.  What ever [sic] happens

24  is up to you."  B.M. accepted defendant's offer and he drove his

25  significant other's Toyota Camry to Santa Clarita to pick B.M. up.

26    Rather than take B.M. to Hollywood as they agreed, defendant

27  drove to his apartment in Montebello, California.  Defendant told

28

1    B.M. that he did not, in fact, have cocaine.  B.M. texted M.B., "I
2    don't wana stay I wana see you but he's not gona let me leave."

3         At approximately 12:23 a.m., defendant gave B.M. a line of
4    fentanyl, a powerful synthetic opioid.  Defendant did not tell B.M.
5    that the substance he gave her was fentanyl.  B.M. snorted the line
6    through a straw and then texted M.B. "[h]e just gave me a line and I
7    don't think it's coke."  One minute later, B.M. texted M.B. a text
8    that included, "I thinks he just drugged me with something bad . . ."
9    M.B. asked B.M. if she "took" the line and B.M. responded, "Yes, I
10   thought it was coke bit it's not."

11        Beginning at 1:14 a.m., defendant used his iPhone to record
12   penetrative sex acts he performed on B.M.

13        At 2:24 a.m. defendant texted M.B., "I'm just scared that [B.M.]
14   is not breathing does she do this often[?]" Defendant and M.B. then
15   spoke over the phone and M.B. instructed defendant to call 911.
16   Defendant did not call 911 or otherwise seek medical care for B.M.
17   until 8:06 a.m.  Paramedics came to the apartment and immediately
18   pronounced B.M. dead.

19        The Los Angeles County Medical Examiner-Coroner concluded that
20   B.M. died of the "combined depressant effects of alcohol and
21   fentanyl."  But for the fentanyl, B.M. would not have died – alcohol
22   was not present at such a high level as to have caused the death
23   alone, and thus her death would not have occurred in the absence of
24   fentanyl.

25        In the nearly six hours between when defendant learned that B.M.
26   was not breathing and when he ultimately called 911, defendant
27   cleaned his apartment of fentanyl and other evidence of drug
28   trafficking.  He placed these items in the trunk of his significant

                                    11

other's car and then drove the car away from the apartment in attempt to hide it from law enforcement.

On February 28, 2019, officers of the Montebello Police Department obtained a search warrant for the car.  Inside the trunk, officers discovered 1.895 kilograms of heroin, 21 grams of fentanyl, 1.43 kilograms of marijuana, 0.36 grams of methamphetamine, plastic baggies, rubber gloves, and masks.  In a cardboard box inside the trunk, officers found a digital scale, utility knife replacement blades, and a Smith & Wesson, model M&P 45 Shield, .45 caliber semiautomatic pistol, bearing serial number HWT1396, loaded with six rounds of live ammunition.  Defendant possessed each of these items. Defendant possessed the heroin and fentanyl with the intent to distribute to another person, that is, to sell it.  Defendant possessed the pistol in furtherance of drug trafficking crimes, namely, possession with the intent to distribute heroin and fentanyl.

In the passenger compartment of the car, the officers found a blue flip phone and a notebook defendant used as a pay/owe ledger.  A subsequent search of the phone revealed text messages consistent with drug distributions.  The phone included an incoming text message from a number stored as "Chicago" stating, "Hey you up? Check it out I need to holla at you as soon as I can I need to get some more things done like more clothes black and white t's."  The pay/owe ledgers contained notations using coded language for various narcotics and prices for "Black," "Clear," "Fety," "Glass," "Chyna," and "Chyna White," and calculations dated "2/14/19" under the heading "Chicago."

In a recorded jail call on March 5, 2019, defendant instructed his significant other to tell officers that the blue flip phone is a play phone for their children.  Defendant directed her to take the

blue flip phone and "break it, throw it, whatever," when she recovered the car from impound.  He also directed her to "burn" the notebook containing the pay/owe sheets.  At the time defendant directed his significant other to destroy this evidence he was aware that he was the subject of an ongoing investigation and prosecution and that the items he directed her to destroy contained material evidence of his guilt.

On February 28, 2019, in Montebello, California, within the Central District of California, defendant knowingly distributed fentanyl to B.M.  Defendant knew that the substance he distributed to B.M. was fentanyl.  B.M. ingested the fentanyl defendant distributed, which resulted in her death.

SENTENCING FACTORS

20.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

21.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level: | 38 | U.S.S.G. § 2D1.1(a)(2) |
| Attempt to Obstruct or Impede the Administration of Justice: | +2 | U.S.S.G. § 3C1.1 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

22.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

23.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

24.  Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.     The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.     The right to confront and cross-examine witnesses against defendant.

f.     The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.     The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.     Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

25.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

26.  Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 420 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any

portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

20.   This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEAS</u>

21.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a

claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22. Defendant agrees that if the counts of conviction are vacated, reversed, or set aside, or the death results sentencing enhancement imposed by the Court to which the parties stipulated in this agreement is vacated or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

23. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

24. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

25.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal

Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 21 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one –– not the prosecutor, defendant's attorney, or the Court –– can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

1

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2      30.   The parties agree that this agreement will be considered

3  part of the record of defendant's guilty plea hearing as if the

4  entire agreement had been read into the record of the proceeding.

5  AGREED AND ACCEPTED

6  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7  CALIFORNIA

8  TRACY L. WILKISON
   Acting United States Attorney

9

10 _____          August 11, 2021
                                           _____
   MARIA JHAI                              Date
11 KATHRYNNE SEIDEN
   Assistant United States Attorneys
12

13

14 _____          _____
   EDWIN OLIVA                             Date
15 Defendant

16

17

18 _____          _____
   MEGHAN BLANCO                           Date
19 Attorney for Defendant EDWIN OLIVA

20

21

22

23

24

25

26

27

28

                          21

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

EDWIN OLIVA
Defendant

Date

22

1

### CERTIFICATION OF DEFENDANT'S ATTORNEY

2       I am EDWIN OLIVA's attorney.  I have carefully and thoroughly

3   discussed every part of this agreement with my client.  Further, I

4   have fully advised my client of his rights, of possible pretrial

5   motions that might be filed, of possible defenses that might be

6   asserted either prior to or at trial, of the sentencing factors set

7   forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8   provisions, and of the consequences of entering into this agreement.

9   To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the factual basis set

14   forth in this agreement is sufficient to support my client's entry of

15   a guilty pleas pursuant to this agreement.

16

17   MEGHAN BLANCO                      Date
     Attorney for Defendant EDWIN OLIVA

18

19

20

21

22

23

24

25

26

27

28